CHARLES D. COON v. SIMON BOUCHARD AND HARRIET BOUCHARD.

*Mortgage foreclosure—Lost papers—Evidence—Payment.*

1. How. Stat. § 7519, requiring the filing of a bond for indemnity where suit is brought upon a lost note, is confined in its operation, by the preceding section, to negotiable instruments.

2. Where the destruction of a note and mortgage is shown, and parol testimony given of their contents, an objection that the prior introduction of a certified copy of the record of the mortgage disclosed that there was but one witness to its execution becomes immaterial.

3. This case involves the question of the amount due upon a note and mortgage, and it is held that the burden is upon the defendants to show alleged payments, and the decree of the circuit judge as to such amount is found to be satisfactory, and is affirmed.

Appeal from Schoolcraft. (Steere, J.) Argued February 8, 1889. Decided April 19, 1889.

Foreclosure case. Defendants appeal. Decree affirmed. The facts are stated in the opinion.

*W. S. Pechin,* for complainant.

*W. F. Riggs,* for defendants.

LONG, J. The bill was filed in this cause to foreclose a mortgage made and executed by defendants to one William Olmsted, and assigned by Olmsted to complainant. On the hearing in the court below the complainant had a decree finding the amount due on the mortgage to be the sum of $375.63, and an order for the sale of the premises described in the bill to satisfy the amount. From this decree defendants appeal.

It appears that in the year 1877 the defendant Simon Bouchard obtained of William Olmsted a credit of $600, and to secure the payment gave his promissory note for that amount, dated November 10, 1877, due and payable November 10, 1880, and secured by the mortgage in controversy here.

On December 31, 1884, Olmsted, the mortgagee, sold and assigned the note and mortgage to Charles D Coon, the complainant, who claims that there is due and unpaid on the note and mortgage the sum of $470.73, with interest from November 10, 1880.

Defendants admit the original indebtedness, and the execution of the note and mortgage, but claim—

1. Entire satisfaction by payment in full of the debt.
2. An offset for non-fulfillment of contract.

It appears that at the time of the commencement of these foreclosure proceedings, in 1886, the complainant did not have the possession of the note and mortgage; the same having been destroyed by fire in February, 1886, previous to commencement of suit.

Defendants contend that the decree is erroneous in granting costs to complainant, for the reason that, the note and mortgage being lost, before complainant would be entitled to costs a bond must be filed, as provided by section 7519, How. Stat. This statute, however, is only made applicable to negotiable instruments by the provisions of the preceding section. The note in controversy here was non-negotiable, and this statute has no effect upon the action of the costs to be recovered. The note and mortgage were destroyed by fire. This fact was fully established, and the complainant had the right to prove their contents by parol.

The defendants contend that the mortgage only had one witness, and was therefore not entitled to record. This becomes a matter of no importance in the case. It

appears that the mortgage was recorded at the office of the register of deeds of Schoolcraft county. A certified copy of the record of the mortgage was offered in evidence, and the objection made by the defendants that the mortgage was not entitled to record by reason of having only one attesting witness. Complainant then made proof of the destruction of the note and mortgage by fire, and then was permitted to prove their contents by parol. This was competent evidence, and the fact that some evidence was made or offered by the certified copy of the record is of no moment in the case. The defendant Simon Bouchard himself testified to the contents, and there is no contradiction in the record in regard to them.

Defendants' counsel also contends that William Olmsted kept the account between himself and defendants upon his books, and that the whole account appeared there, and that complainant failed to prove his case, in not putting these books in evidence. This is not so. The mortgage and note were given for the sum of $600. The defendants acknowledge the correctness of this indebtedness, and the giving of the note and mortgage to secure the indebtedness. They do not claim that the note and mortgage were ever given up and canceled, but insist now that payments have been made which should cancel them, and also claim a set-off against them by reason of the breach of another contract. The burden is upon the defendants to show these payments, and not upon the complainant. If Olmsted's books would have shown payments, the defendants could have compelled their production, or, if the mortgage was only security for the book-accounts, the burden was upon the defendants to show that fact.

Mr. Olmsted testified that the consideration of the note and mortgage was a certain indebtedness from Simon Bouchard to him, and for the payment of gill-nets,

which he ordered at that time for Simon Bouchard, and which were delivered in the spring of 1878, and that such indebtedness amounted to over $600. This is not disputed by Mr. Bouchard. Mr. Bouchard claims, however, that, when the mortgage was assigned by Olmsted to Mr. Coon, the complainant, he was owing but very little if anything on the same. Defendants also claim that in 1881 Olmsted requested Bouchard to catch fish for him at the mouth of the Manistique, for which work Olmsted agreed to pay Bouchard $2.50 a package, Olmsted furnishing the empty packages and salt; that under this arrangement Bouchard earned and had coming to him from Olmsted over $650 for work and labor. Defendant also claims that he lost quite a considerable sum of money by reason of Olmsted failing to come for the fish caught by him, and to furnish salt as agreed, so that many of the fish caught became spoiled and worthless. Some other claims of set-off are made by the defendants.

Defendant Simon Bouchard was examined as a witness, and gives his version of this contract with Olmsted. His son George was also produced as a witness, and gave testimony tending to show that some talk was had about Olmsted taking the catch of fish that season. Mr. Fred M. Olmsted was called as a witness by complainant, and testified that he kept the books of William Olmsted, the mortgagee, and that in April, 1881, Mr. Simon Bouchard came there to the store in Garden Bay, and he looked the books over with him, and at that time credited Bouchard on the note in controversy $129, and at that time Bouchard acknowledged an indebtedness to Olmsted of $470; that he then made a claim for damages for about $175.

The testimony of Mr. William Olmsted was taken in Dakota, and produced and read by complainant. He testifies, substantially, that the note and mortgage were given

as heretofore stated, and that the indebtedness to him for which it was given then amounted to over $600; that he was a dealer in lake fish, and in general merchandise, in the years from 1877 to 1881 inclusive; that he never agreed or promised to purchase from Simon Bouchard any and all the product of his fishery during the years 1877 to 1881, inclusive; that he bought fish from Bouchard from time to time, and made the price of purchase at the time they were delivered, and that said Bouchard sold to him or other dealers as he saw fit; that there were no contract relations existing 'between him and Bouchard to take all his fish, or any part of them, during this time; that he bought of him from time to time, and paid him for what he bought. Witness further says that he never made any agreement with Bouchard to furnish him fish supplies, such as barrels and salt, but did furnish them to him, the same as to other fishermen, but with no special agreement to do so; and that there was no agreement on his part to furnish him these supplies during the year 1881; and that he never agreed to pay Bouchard five dollars per barrel for what fish he (Bouchard) would catch at the mouth of the Manistique river, in 1881, or at any time. Witness further says that the amount remaining unpaid upon the note and mortgage has never been settled up or paid.

The most of this testimony was taken in open court, before Judge Steere, of the Schoolcraft circuit. The parties are directly at issue upon the main questions in controversy. That the note and mortgage were given there is no question, and that the consideration was fully paid by Olmsted to Bouchard there is no doubt, from the testimony of Bouchard himself. We are satisfied that the claim of defendants' counsel that the mortgage has been paid and satisfied in full is not established here. The only remaining question is, what amount still

remains unpaid upon the note and mortgage? It is purely a question of fact to be gathered from the evidence. The burden of proving payments and set-offs is upon the defendants, even if such a claim as is set up here could be treated in the nature of set-off. The amount claimed by the complainant as remaining unpaid is the sum of $470.73, with interest from November 10, 1880. The court below found remaining due and unpaid the sum of $375.63, with interest after December 20, 1886, the date when the decree in the court below took effect. We have carefully examined the testimony in the case, and the points made by the solicitor for the defendants, and are satisfied with the decree of the circuit court as to the amount found unpaid.

The decree of the court below must therefore be affirmed, with costs.

CHAMPLIN, MORSE, and CAMPBELL, JJ., concurred. SHERWOOD, C. J., did not sit.