REESE *v.* DYER.

1. BILLS AND NOTES — LOST INSTRUMENTS — NEGOTIABLE INSTRUMENTS—INDEMNITY BONDS—STATUTES.

Before an indemnifying bond is required under 3 Comp. Laws 1915, § 12544, it must affirmatively appear that the note was negotiable, because by section 12543, relating to suits on lost notes, the filing of a bond for indemnity is confined to negotiable instruments.

2. APPEAL AND ERROR—WEIGHT OF EVIDENCE—NECESSITY FOR EXCEPTIONS—ASSIGNMENTS OF ERROR—STATUTES.

Under Act No. 314, Pub. Acts 1915, chap. 18, § 15 (3 Comp. Laws 1915, § 12587), providing that exceptions may be filed to findings of fact, that such facts are against the clear weight of evidence, and error may be assigned upon such exceptions, and, if an appeal is taken, the same shall be reviewed by the Supreme Court, where no ex-

ceptions are filed alleging that the findings of a trial court are against the clear weight of evidence and no error is assigned upon any such exception, the evidence will not be weighed, and, if there is any evidence to sustain the findings of the trial court, they will be deemed to be conclusive.

3. LIMITATION OF ACTIONS—PART PAYMENT—OPERATION AND EFFECT.

The statute of limitations does enter into the case in an action on a note, where such note is dated April 21, 1897, is drawn without interest, and no payments are due thereon until 1903, when a sum sufficient to cover payments due for six years is paid, and in 1909 the payment due in such year is paid and an action is commenced on such note within the statutory period after the first unpaid payment falls due in 1910.

4. APPEAL AND ERROR—EVIDENCE—DEPOSITIONS—HARMLESS ERROR.

Where the evidence was sufficient to support the court's findings that a note was not outlawed and no exception was filed alleging that the findings of the court were against the clear weight of the evidence and no error was assigned upon any such exception, the court will not weigh the evidence, and it is consequently immaterial whether a deposition was improperly admitted.

5. SAME—PLEADINGS—VARIANCE—AMENDMENTS.

Any variance between the declaration and proof in an action on a promissory note cannot be availed of where the attention of the trial court was not called to such variance at any time during the trial or thereafter, as, if the objection was timely made, an amendment of the declaration might have been permitted.

Error to Cass; Des Voignes, J. Submitted October 12, 1917. (Docket No. 107.) Decided December 27, 1917.

Assumpsit by Ella A. Reese against Arthur G. Dyer and another on a promissory note. Judgment for plaintiff. Defendants bring error. Affirmed.

*C. M. Lyle* and *M. L. Howell,* for appellants.

*John R. Carr,* for appellee.

KUHN, C. J. This is an action of assumpsit to recover an amount plaintiff claims under the terms of a contract between the defendants and herself and a promissory note referred to therein. Suit was commenced January 27, 1916. The contract in question was entered into on April 21, 1897, in settlement of an appeal taken by plaintiff from the probate of the will of her father, James M. Dyer, and reads as follows:

"Whereas, Ella Wetherbee has appealed from the probate of her father's will on the ground of mental incompetency and undue influence, and whereas, said appeal is pending in the circuit court for the county of Cass, and whereas, said Ella is the only child of said James Dyer, deceased, and whereas, Phœbe Dyer is the widow of said James Dyer, deceased, and whereas, Arthur G. Dyer and the said Phœbe are sole legatees and devisees under the said will, excepting $25.00 willed to the said Ella; therefore, in consideration that the said appeal be dismissed from the circuit court and the settlement of the estate proceeded with in the probate court,

"We, the undersigned, Phœbe Dyer, widow aforesaid, and the said Arthur G. Dyer, do promise to pay the said Ella Wetherbee the sum of $800.00, according to the terms of a promissory note this day executed by us to her, and also in consideration of the said Phœbe deeding to the said Ella a house and lot in the village of Corey, in said county, valued at $200.00. Also in consideration of the dismissal of said appeal for the purpose aforesaid, I, said Arthur G. Dyer, do hereby promise to give to the said Ella Wetherbee my individual promissory note for the sum of one hundred dollars ($100.00), payable to her four years after the death of the said Phœbe Dyer. Upon the execution of this paper, and the execution of the aforesaid promissory note, said appeal is to be dismissed and the settlement of the estate proceeded with according to the rules and practice of the probate court. The provision of this agreement is hereby made binding upon our and each of our heirs, administrators, executors and assigns.

"In witness whereof, we do here౮y set our hands this 21st day of April. A. D. 1897.

[Signed] "PHŒBE C. DYER.

"A. G. DYER.

"ELLA A. WETHERBEE."

(Acknowledged by all the parties April 24, 1897, before Samuel P. King, Notary Public, Cass county.)

Since the making of this contract, plaintiff's name has been changed by marriage from Ella A. Wetherbee to Ella A. Reese. Arthur G. Dyer is plaintiff's foster brother, and Phœbe Dyer her mother. By the contract the $800 was payable "according to the terms of a promissory note this day executed by us to, her." The note was not produced at the trial. According to the testimony and the finding of the trial judge, the note was in fact executed by both Phœbe C. Dyer and Arthur G. Dyer and delivered to plaintiff, who appears to have had it in her possession until about 1900, when she claims she took it to her mother, who was. then living on the farm with Arthur G. Dyer, and asked her to put it in the safe there. She took the contract to her lawyer in Three Rivers, Mich. Some years afterwards she asked her mother for the note; but Mrs. Dyer was unable to find it, and Arthur Dyer said he knew nothing about it. They both claimed that the key to a drawer in the safe was lost, and refused to break it open. The declaration alleges that the note was for $800, due seven years from date, with interest. Plaintiff's testimony is to the effect that the note was for $800, drawn up without interest, and that nothing was to be paid on the note for the first six years, and that defendants were to pay $50 a year from that time on until it was all paid. There was. no contradictory testimony, and the trial court so found. The first installment, therefore, under the contract and note, was due April 21, 1903, and the last will not become payable till April 21, 1918.

Plaintiff's duplicate of the contract, which was of-

fered in evidence, bore three indorsements of payments, the first, April 30, 1903, $300 in land; the second, May 17, 1909, $50; and the last, April 12, 1915, one gasoline oven, valued at 50 cents. It is admitted that the first credit was given for a piece of land deeded to plaintiff by her mother, and that the indorsement of the $300 on the contract was made with the knowledge and under the direction of Arthur G. Dyer. The second credit was for a payment of $50 in money made by Mrs. Dyer. Arthur Dyer did not know of this payment at the time it was made, but was advised of it afterwards. Plaintiff insists he then told her to indorse it on the contract. He denies this, but says he made no objection when she told him she had indorsed it. As to the last credit item, it appears that plaintiff, after asking Arthur Dyer for a small payment on the contract, either in cash or merchandise, and having been refused, went to her mother, who gave her a gasoline oven. Plaintiff testified that Mrs. Dyer told her she could indorse that on the contract as a payment, and also testified that Arthur Dyer had told her before she went to her mother:

"Anything you can get out of her I am willing you should indorse on the contract."

Arthur Dyer at first denied making this statement, but later said he could not remember and would not say positively that he did not. He admitted plaintiff came to him for a payment, and that he told her he could give her nothing.

The case was tried December 9, 1916, without a jury. Three weeks before, the deposition of defendant Phœbe Dyer had been taken at Cassopolis, the county seat, on behalf of the plaintiff, pursuant to a notice which stated as the reason for taking same:

"Because said witness is temporarily in the village of Cassopolis, and there is reasonable cause for ap-

prehension that her testimony cannot be had at the trial of said cause."

The deposition was allowed to be read in evidence on the trial over the objection of defendants' counsel, who stated Mrs. Dyer was still in town and no reason appeared why she was unable to be present in court. Aside from this deposition, the only testimony in the case was that of plaintiff and defendant Arthur G. Dyer. At the close of the testimony the court delivered an oral opinion, which was taken down by the stenographer. He found that the note was signed by both defendants, that its terms were as testified to by plaintiff, that the payments had been made as indorsed and testified to by plaintiff, and announced that he would render judgment for the balance due up to date of trial, $349.50, leaving two $50 installments yet to mature. Judgment was entered accordingly.

On December 12, 1916, defendants filed exceptions to the findings of fact and law in the oral opinion delivered by the court, and on December 30, 1916, filed a motion for a new trial. Subsequently the court filed an opinion denying the motion for new trial, to which defendants filed exceptions.

The points relied upon for reversal, as stated by counsel for appellants in their brief, are as follows:

(1) Failure to file indemnifying bond.
(2) Error in admission of Phœbe C. Dyer's deposition.
(3) That the note was outlawed as to both defendants.
(4) That the note was outlawed as to Arthur G. Dyer.
(5) Fatal variance between the declaration and the evidence.

The declaration upon which plaintiff bases her right of action alleges that the note was payable to her, and the contract introduced in evidence also states that

199—Mich.—14.

the promise to pay was made to Ella A. Wetherbee, according to the terms of a promissory note. There is no testimony in the record to show that the note was other than alleged in the declaration, which allegation, if true, would make it a nonnegotiable instrument. Before an indemnifying bond is required under section 12544, 3 Comp. Laws 1915, it must appear that the note was negotiable, because by virtue of section 12543 the filing of a bond for indemnity, where a suit is brought upon a lost note, is confined in its operation to negotiable instruments. See *Coon* v. *Bouchard*, 74 Mich. 486 (42 N. W. 72). It not having been made to affirmatively appear that the note is negotiable, the point that the bond was not filed is not in our opinion well taken. See 25 Cyc. p. 1616.

Section 15 of chapter 18 of the judicature act (Act No. 314, Public Acts of 1915, 3 Comp. Laws 1915, § 12587) provides, with reference to the findings of fact and the conclusions of law upon the trial by the court of any question of fact or law, as follows:

"In such cases, either party may file exceptions to the findings of facts, that such findings are against the clear weight of evidence, and may assign error upon such exceptions, and if an appeal be taken, the same shall be reviewed by the Supreme Court."

No exception was filed by the appellants in this case alleging that the findings of the court were against the clear weight of the evidence, and no error was assigned upon any such exception. Because of the failure to file such exception and to assign error, we will not weigh the evidence taken before the court, and if there is any evidence to sustain the findings of the court, it must be held that such findings are conclusive, under the repeated decisions of this court. As appears from the statement of facts herein set forth, the testimony of the plaintiff herself and the written evidence in our opinion is sufficient proof to support

the findings of the court that the claim had not outlawed against these defendants, even if the deposition of Phœbe C. Dyer is not considered. The court found, and there were proofs to sustain his findings, that the note, which was dated April 21, 1897, was drawn without interest, and no payments were due thereon until the end of six years, and that thereafter the defendants were to pay $50 a year until it was fully paid. The proofs further show that in 1903, $300 was paid on the note, which, applied upon the payments as they matured, resulted in there being no payment due until 1909. The proofs further show that in 1909 a $50 payment was made, so that under the proofs no payment was due until 1910 and the years thereafter. Under these facts as found, the statute of limitations did not enter into the case, because the suit was commenced within the statutory period after the first unpaid installment on the note fell due. We must refuse to weigh the evidence, and it is therefore immaterial whether the deposition in question was admitted.

With reference to the claim of variance between the declaration and the evidence as to the terms of the note, it appears that the attention of the court was not called to this alleged variance in any manner during the trial or after the trial. It was not a reason given or assigned in the motion for a new trial, and we are of the opinion that the point should not be. raised at this time, because if the objection had been timely made, an amendment of the declaration might have been permitted.

The judgment should be, and is hereby, affirmed.

STONE, OSTRANDER, BIRD, MOORE, STEERE, BROOKE, and FELLOWS, JJ., concurred.